UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LEO F. SCHWEITZER, | : |
| | : |
| Petitioner | : |
| | : |
| v. | : CIVIL NO. 3:CV-05-2042 |
| | : |
| UNITED STATES, ET AL., | : (Judge Kosik) |
| | : |
| Respondents | : |

**M E M O R A N D U M**

      Leo F. Schweitzer, an inmate currently confined at the Federal Prison Camp at Canaan, Waymart, Pennsylvania, filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1] Attached to his petition are numerous supporting exhibits. Schweitzer has submitted the required filing fee. In the petition, Schweitzer claims that his 1985 judgment and conviction by the United States District Court for the Eastern District of Pennsylvania is void for several reasons.[2] He also challenges his sentence calculation by the Bureau of Prisons (BOP), specifically, that the BOP failed to credit his sentence with time served. As a result of the BOP's alleged failure, the United States Parole Commission has subjected him to additional punishment.

---

    [1] This action has been docketed by the Clerk of Court as a § 2241 petition. Schweitzer actually labels his filing as follows: "Independent Action Writ of Habeas Corpus and Writ of Error Coram Nobis" (Doc. 1).

    [2] Specifically, Schweitzer claims that his conviction and sentence are in violation of the Supreme Court's holdings in Apprendi v. New Jersey, 530 U.S. 466 (2000), Blakely v. Washington, ___ U.S. ___, 124 S.Ct. 2531 (2004) and United States v. Booker, ___ U.S. ___, 125 S. Ct. 738 (2005).

On November 7, 2005, an Order was issued directing Respondents to file a response to the allegations set forth in the petition within twenty (20) days. (Doc. 4.) Following an enlargement of time, a response and exhibits thereto were filed on December 12, 2005. (Docs. 14, 15.) A traverse was filed by Schweitzer on January 17, 2006.[3] (Doc. 23.) The petition is now ripe for consideration. Also pending are Schweitzer's motion for evidentiary hearing (Doc. 22) and motion for summary judgment (Doc. 29).[4]

### I. Background

**A. Factual History - Conviction/Parole Commission Activity**

On July 13, 1985, Schweitzer was convicted on charges of filing false statements and mail fraud. (Doc. 14, Ex. 1.) He was sentenced on October 25, 1985 in the Eastern District Court of Pennsylvania to 15 years in prison. He was also ordered to pay a sizable restitution amount.

On September 9, 1985, he filed a motion for entry of judgment of acquittal/or for new trial which was denied by the Eastern District in September of 1985. He thereafter appealed his conviction to the United States Court of Appeals for the Third Circuit. The Third Circuit affirmed his conviction on August 27, 1986. See United States v. Schweitzer, 1988 WL 115774 (E.D. Pa.). Schweitzer again moved for post-judgment relief. On March 3, 1987, the Eastern District Court denied his motion for a reduction of sentence.

Schweitzer also challenged his conviction and sentence in the Eastern District of

---

[3] On January 20, 2006, Schweitzer filed an "Affidavit" (Doc. 24) and a "Request for Judicial Notice" (Doc. 25).

[4] The motion for summary judgment will be denied without prejudice on the basis that it is not a proper procedural mechanism for addressing Schweitzer's habeas corpus claims. Presently pending before the Court is a ripe § 2241 petition which properly presents Schweitzer's claims and has been briefed in accordance with 28 U.S.C. § 2243. The motion for hearing will also be denied based upon the Court's resolution of the pending petition.

Pennsylvania by motion filed pursuant to 28 U.S.C. § 2255. In the motion, the following grounds were raised: (1) excessive restitution; (2) defective mail fraud counts/error in trial court's charge to jury on mail fraud; (3) excessive sentence; (4) newly discovered exculpatory evidence withheld by government at trial; and, (5) indictment tainted by statements made by Assistant United States Attorney at grand jury proceedings. The § 2255 motion was denied on October 26, 1988.

On October 23, 1990, a Certificate of Parole was issued paroling Schweitzer from his 15 year sentence on the false statements/mail fraud conviction. He was to remain under supervision until his full term date of October 23, 2000. (Doc. 14, Ex. 2, Cert. of Parole.) Parole was subsequently revoked by Notice of Action dated February 24, 1998, based upon the violation of conditions of release by committing new criminal conduct for which a new conviction was received. (Id., Ex. 3.) Schweitzer received no credit for time spent on parole ("street time") and was ordered to serve 48 months prior to reparole. He was also later ordered to serve an additional 30 days for a rule infraction. (Id., Ex. 4.) On February 23, 1999, Schweitzer was reparoled, and ordered to remain under supervision until his new full term date of January 11, 2008.[5]

Parole was revoked a second time by Notice of Action dated January 13, 2004. (Id., Ex. 6.) Credit was initially granted by the United States Parole Commission for all street time because the violations were only administrative, and Schweitzer ordered to serve 7 months, to March 20, 2004. (Id.) Schweitzer was thereafter reparoled on March 20, 2004, with a full term expiration date of January 11, 2008.

The Parole Commission later learned that on January 27, 2005, Schweitzer had received a new conviction for criminal activity committed while on parole. His parole case was reopened for a special reconsideration hearing to determine whether his grant of reparole should be cancelled or

---

[5] This date is calculated taking into consideration the lost street time credits.

3

other action taken. (Id., Ex. 8.) Following a hearing, the earlier grant of parole remained intact, but all street time while on parole was ordered forfeited.[6] (Id., Ex. 9.)

### B.    Factual History  - Bureau of Prison Activity

The following facts flesh out the history set forth above and also recite the facts relevant to the BOP's calculation of Schweitzer's sentence computation. Because Schweitzer was sentenced on October 25, 1985, prior to November 1, 1987, his sentence is referred to as an "Old Law" sentence.[7] The sentence began to run on the date it was imposed. (See 18 U.S.C. § 3568 (now repealed); Doc. 14, Ex. 12, ¶¶ 7, 8.) Schweitzer was awarded jail time credit of one (1) day for March 19, 1984, toward his sentence. His full term release date became October 23, 2000. (Doc. 14, Ex. 12, ¶ 10.)

Schweitzer was also eligible to receive Statutory Good Time of ten (10) days per month toward his sentence pursuant to 18 U.S.C. § 4161 (now repealed). In light of his 15 year sentence, he was therefore eligible to receive a total of 1,800 days of good time calculated on the basis of 180 month sentence multiplied by 10 days per month, yielding a Statutory Release Date of November 19, 1995.

On October 26, 1990, Schweitzer was released on parole with 3,650 days still remaining to be served on his Old Law sentence (since he was paroled prior to reaching his Full Term Date of October 23, 2000). (Doc. 14, Ex. 12, ¶ 14.) Because Schweitzer was released prior to reaching his Statutory Release Date of November 19, 1995, the award of Statutory Good time did not benefit him.

---

[6] This Notice of Action ordered that none of the time shall be credited from February 24, 1999 to December 12, 2001, and from March 2, 2002 to August 19, 2003. (Doc. 14, Ex. 9.) The most recent sentence computation by the Bureau of Prisons submitted by Respondents does not yet reflect the loss of street time. Schweitzer's full term date will therefore be extended by the amount of time he was on parole when the new computation is completed.

[7] Due to the enactment of the Sentencing Reform Act of 1984, sentences imposed for offenses committed before November 1, 1987 are referred to as "Old Law" sentences and those committed on or after this date are referred to as "New Law" sentences.

4

His benefit was the fact that he was released conditionally on parole.

As previously set forth, Schweitzer committed criminal activity while on parole and was rearrested on January 24, 1995, by the United States Marshals Service. On March 10, 1995, he was taken into custody by the BOP as a pre-trial detainee. On November 7, 1995, he was sentenced in the Eastern District Court of Pennsylvania to 41 months imprisonment with 3 years of supervision for the crimes of Conspiracy, False Statements and Money Laundering ( "New Law" sentence because it was imposed post November 1, 1987). He received credit for time spent in jail from January 24, 1995 through November 6, 1995. He was also entitled to earn Good Conduct Time of up to 54 days per year served pursuant to 18 U.S.C. § 3624(b). (See Id., Ex. 12, ¶ 1.)

On January 14, 1998, Schweitzer was released pursuant to Good Conduct Time. At this point he began to serve his parole violator term of 3,650 days (on his "Old Law" sentence). On February 24, 1998, a Notice of Action was issued stating "Revoke parole. None of the time on parole shall be credited and continue to presumptive parole after the service of 48 months on January 24, 1999." On July 2, 1998, a Notice of Action was issued which set forth no change in Presumptive Parole Date of January 24, 1999, and Parole Effective January 24, 1999. (Id.,¶ 24.)

A Notice of Action issued January 21, 1999 directed that the case be reopened and the January 24, 1999 date be retarded by 30 days due to the violation of institution rules with a Parole Effective date of February 23, 1999. (Id., ¶ 25.) On February 23, 1999, Schweitzer was conditionally released on parole with 3,244 days remaining on his sentence (started with parole violator term of 3,650 less the 406 days served from 1/14/98 through 2/23/99). (Id., ¶ 26.)

Good Conduct Time credit was received by Schweitzer for the New Law sentence but no Statutory Good Time was received until Schweitzer began to serve his parole violator term on January 14, 1998. He did not benefit from any Statutory Good Time in that he was paroled prior to

5

reaching his Statutory Release Date of September 29, 2004.

Schweitzer was arrested for a parole violation on December 13, 2001, and placed in the Lehigh County jail on a parole violator warrant. (Doc. 14, Ex. 2, ¶ 28.) On February 13, 2002, he was transferred into BOP custody. On February 28, 2002, the Parole Commission issued a Notice of Action which read as follows: "Release forthwith from the custody of the warrant dated 12-12-01, and reinstate to supervision". (Id. at ¶ 30.) On March 1, 2002, Schweitzer was released on parole pursuant to this Notice of Action.

New criminal activity again occurred while on supervision. Schweitzer self-surrendered on August 11, 2003, and was charged with federal criminal violations. He was released on bond. He again self-surrendered on August 20, 2003, and was arrested on a parole violator warrant. Parole was revoked on January 13, 2004. All of the time spent on parole was credited. He received credit also for time spent in custody on the previous warrant from 12/13/01 through 3/1/02. The new effective reparole date was March 20, 2004, following service of 7 months. Based on the foregoing, Schweitzer began service of his new parole violator term of 1,606 days (with 3,244 days remaining, the credit from 2/24/99 through 8/19/03 was subtracted, arriving at a total of 1638 days).

On March 20, 2004, Schweitzer was again conditionally released on parole with 1,392 days remaining - - he had started with 1,606 days remaining and received credit from 8/20/03 through 3/20/04 - - a total of 214 days. (See Doc.14, Ex. 12, ¶ 36.) Schweitzer remained in custody on said date however pending new federal criminal charges. He was released on bond on April 29, 2004.[8]

---

[8] Schweitzer did not earn any Statutory Good Time during his period of incarceration between December 13, 2001 through March 1, 2002 because he was never "violated" by the Parole Commission. He was given parole supervision credit. Schweitzer did receive Statutory Good Time from August 20, 2003 through March 20, 2004. Because he was paroled before his Statutory Release Date of August 2, 2006, the Statutory Good Time was of no benefit to him. (Doc. 14, Ex. 12, ¶ 40.)

Schweitzer surrendered for sentencing on the federal charges on January 27, 2005. He was sentenced to 57 months imprisonment with 3 years of supervision on multiple Mail Fraud charges by the Eastern District Court of Pennsylvania. The payment of restitution and assessments were also ordered. An additional consecutive sentence of 27 months with a 3 year supervision term was also imposed on the charge of Making False Statements.[9] (Id., Ex. 2 at ¶ 41.) His sentence was credited with jail time credit for his period of confinement between March 20, 2004 and April 29, 2004. His projected release date is January 21, 2011 via Good Conduct Time release.

At the conclusion of this sentence, Schweitzer still has 1,392 days remaining for the 1985 offense. If he is again incarcerated on a parole violator term, he will again be eligible for an award of Statutory Good Time of 10 days per month. Schweitzer received jail time credit toward his 41 month federal sentence for the following periods: January 2, 1995 through November 6, 1995 and November 7, 1995 through January 14, 1998. He also received credit from January 14, 1998 through February 23, 1999 toward his parole violator term. (Doc. 14, Ex. 12, ¶ 47.)

**II.    Discussion**

    **A.    Challenge to Federal Conviction/Sentence**

Schweitzer contends that his 1985 conviction and sentence are invalid based upon violations of the Fifth and Sixth Amendments to the United States Constitution, the Due Process Clause, the fact that he is innocent of the charges and due to the failure of an impartial jury to determine his guilt as to every element of the offense. In support of his claims he primarily cites to the following three cases: Apprendi v. New Jersey, 530 U.S. 466 (2000); Blakely v. Washington, 124 S. Ct. 2531 (2004); and United States v. Booker, 125 S. Ct. 738 (2005). He claims that the "teachings" of these

---

[9] This consecutive sentence is also a "New Law" sentence as the underlying offenses were committed on or after November 1, 1987.

7

cases demonstrate that a "grievous wrong" has occurred and that there is no time limit on an attack on a judgment which violates due process and therefore is void. (Doc. 1, Pet. at 3.)

"[T]he usual avenue for federal prisoners seeking to challenge the legality of their confinement" is a section 2255 motion. In re Dorsainvil, 119 F.3d 245, 249 (3d Cir. 1997). A challenge to either the validity of a conviction or to a sentence must be brought in a section 2255 motion. See United States v. Miller, 197 F.3d 644, 648 n.2 (3d Cir. 1999); Snead v. Warden, F.C.I. Allenwood, 110 F. Supp. 2d 350, 352 (M.D. Pa. 2000) (Caldwell, J.). Here, Schweitzer is clearly challenging his federal conviction/sentence. Hence, the proper avenue of relief is a section 2255 motion, filed in the district court where he was convicted and sentenced.

A defendant can pursue a 2241 petition only when he shows that the remedy under section 2255 would be "inadequate or ineffective to test the legality of his detention." 28 U.S.C. § 2255 ¶ 5; see also United States v. Brooks, 230 F.3d 643, 647 (3d Cir. 2000). The inadequacy or ineffectiveness must be "a limitation of scope or procedure . . . prevent[ing] a § 2255 proceeding from affording . . . a full hearing and adjudication of [a] wrongful detention claim." Okereke v. United States, 307 F.3d 117, 120 (3d Cir. 2002)(citing Cradle v. United States, 290 F.3d 536, 538 (3d Cir. 2002)(per curiam)). "It is the inefficacy of the remedy, not a personal inability to utilize it, that is determinative." Cradle, 290 F.3d at 538 (citing Garris v. Lindsay, 794 F.2d 722, 727 (D.C. Cir. 1986)); see also Jeffers v. Chandler, 253 F.3d 827, 830 (5th Cir. 2001)("A prior unsuccessful § 2255 motion or the inability to meet" the requirements for a second or successive 2255 motion "does not make § 2255 inadequate or ineffective."); Brown v. Mendez, 167 F. Supp. 2d 723, 727 (M.D. Pa. 2001). If a petitioner improperly challenges a federal conviction or sentence under § 2241, the petition must be dismissed for lack of jurisdiction. Application of Galante, 437 F.2d 1164, 1165 (3d Cir. 1971).

8

In light of these principles, Schweitzer cannot raise his claims via the instant § 2241 petition. He was clearly able to raise similar claims on direct appeal or in his previously filed § 2255 motion but failed to do so. He was aware of the basis underlying these claims but never pursued them. See United States v. Sanders, 247 F.3d 139, 144-46 (4th Cir. 2001)(failure to raise Apprendi-like claim on direct review from criminal conviction constituted procedural default for which defendant could not establish "cause" to justify raising it in habeas petition); see also Bousley v. United States, 523 U.S. 614, 622-23 (1998) (failure to raise claim on direct review could not be excused as futile simply because the claim was "unacceptable to that particular court at that particular time" ).

In addition, the cases relied upon by Schweitzer in support of his arguments of intervening change in the law - - Apprendi, Booker and Blakely - - do not declare that any conduct, previously thought criminal, are no longer criminal and, as such, do not fall within the limited exception recognized in Dorsainvil so as to permit the instant § 2241 petition challenging the federal conviction.[10] Further, none of these cases have been made retroactive to cases on collateral review by the Supreme Court. See United States v. Swinton, 333 F.3d 481, 485 (3d Cir. 2003) (holding Apprendi not retroactive); In re Olopade, ___ F.3d ___, 2005 WL 820550 (3d Cir. April 11 ,2005) (Booker not retroactively applicable to cases on collateral review). The Supreme Court has not directed that any of these cases apply retroactively. In fact, in Booker, the Supreme Court instructs

---

[10] Apprendi addresses the burden of proof and the identity of the factfinder with respect to certain sentencing issues. In Blakely, the Supreme Court held that the Washington state sentencing scheme offended the Sixth Amendment because it deprived the defendant of the constitutional right to a jury trial determination. Extending its holding in Blakely to the Federal Sentencing Guidelines, the Supreme Court explicitly reaffirmed the rule announced in Apprendi that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." Booker, 125 S. Ct. at 756. Thus, the Supreme Court held that the mandatory nature of the federal guidelines rendered them incompatible with the Sixth Amendment's guarantee to the right to a jury trial.

9

that its holding should be applied "to all cases on direct review," Booker, 125 S. Ct. at 769, but makes no reference to cases on collateral review.

Accordingly, Schweitzer is unable to meet his burden in demonstrating that § 2255 is inadequate or ineffective to test the legality of his detention and does fall within the narrow safety valve clause to make § 2241 available avenue to challenge his conviction.[11]

### B.   Challenges to Parole Commission Actions

Without unnecessary elaboration, the gist of Schweitzer's claims against the Parole Commission are that because his 1985 conviction and sentence are allegedly void for the reasons set forth above, any subsequent actions taken by the Parole Commission regarding this sentence are unauthorized and lack a jurisdictional basis.  Schweitzer bases his entire theory on his belief that the underlying conviction and sentence are "void".  Such a finding has not been made.  The Parole Commission does not make independent determinations as to the lawfulness of the underlying conviction and sentence.  The Parole Commission implements the sentence as imposed and acts in response to activities occurring post-sentencing.  The Commission possesses no authority to overturn or modify a sentence as imposed.  Until such time as a conviction/sentence is found to be invalid, the Parole Commission continues to exercise lawful jurisdiction over Schweitzer.

Schweitzer's contention that the Parole Commission lacks statutory authority to exercise jurisdiction over his case is also not well-taken.  Congress continues to extend the existence of the Commission's responsibilities despite abolition of the Commission by the Sentencing Reform Act of

---

[11]  Schweitzer is unable to avoid the provisions governing § 2255 motions by attempting to seek relief under a writ of error coram nobis.  See United States v. Baptiste, 223 F.3d 188, 189-90 (3d Cir. 2000) (holding that the procedural barriers erected by the AEDPA are not sufficient to allow Petitioner to resort to coram nobis merely because he or she is unable to meet the gatekeeping requirements of the AEDPA).

1984.[12]

## C. Challenge to BOP's Calculation to Sentence - Exhaustion

In the petition, Schweitzer contends that the BOP has failed to credit his sentence with Jail Time from January 24, 1995 through February 23, 1999. He also alleges that Statutory Good Time in excess of 500 days has failed to be credited.

It is well settled law that "[f]ederal prisoners are ordinarily required to exhaust their administrative remedies before petitioning for writ of habeas corpus pursuant to § 2241." Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 760 (3d Cir. 1996). A party is required to exhaust administrative remedies before seeking relief in federal court unless Congress has indicated to the contrary or the available administrative remedies are inherently inadequate. Muhammad v. Carlson, 739 F.2d 122, 123 (3d Cir. 1984); see also Young v. Quinlan, 960 F.2d 351, 356 (3d Cir. 1992). Exhaustion is required "for three reasons: (1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and, (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy." Moscato, 98 F.3d at 761-62.

The Bureau of Prisons has established a multi-tiered system whereby a federal prisoner may seek formal review of any aspect of his imprisonment. See 28 C.F.R. §§ 542.10-542.16 (1994). First, "[i]nmates shall informally present their complaints to staff, and staff shall attempt to informally resolve any issue before an inmate files a request for Administrative Remedy." Id. § 542.13(a). Second, "[i]f an inmate is unable to informally resolve his complaint, he may file a formal written complaint [to the warden], on the appropriate form, within twenty (20) calendar days

---

[12] The latest extension occurred on September 29, 2005, pursuant to the United States Parole Commission Extension and Sentencing Commission Authority Act of 2005, Pub. L. 109-76, 119 Stat. 2035, Sec. 2, which extended the Commission for 3 more years.

of the date on which the basis of the complaint occurred." Id. § 542.14(a).  The warden has 15 days in which to respond.  See id. § 542.18.

If an inmate is not satisfied with the warden's response, the response may be appealed to the Regional Director within 20 calendar days from the date of the warden's response.  Id. § 542.15(a).  Finally, if the inmate is dissatisfied with the Regional Director's response, that decision may then be appealed to the General Counsel within 30 calendar days from the date of the Regional Director's response.  Id.  The Regional Director has 30 days to respond, and the General Counsel has 40 days to respond.  See id. § 542.18.

As previously stated, Respondents filed exhibits in support of their response to the habeas petition.  These exhibits incorporate the sworn declaration of K. Michael Sullivan, Senior Attorney at the Federal Correctional Complex at Allenwood, Pennsylvania.  (Doc. 14, Ex. 11, Sullivan Decl.).  Mr. Sullivan verifies that computerized indexes of formal administrative remedies filed by inmates are maintained by USP-Allenwood in the ordinary course of business.  (Id. at ¶ 8.)

A review of Mr. Sullivan's declaration indicates that as of July 1, 1990, the date upon which the first SENTRY records were maintained for administrative remedies, Schweitzer has only filed one (1) administrative remedy.  (Id. at ¶ 10.)  Specifically, on February 17, 2004, Schweitzer filed administrative remedy #327374-R1 with the Northeast Regional Office.  In the remedy form, Schweitzer complained that his sentence computation was incorrect and he requested credit for time served.  On March 12, 2004, his administrative remedy was rejected because it was filed at the wrong level.  Schweitzer was informed that the issue must first be addressed by the warden and he was directed to seek assistance from his Unit Team for filing instructions.

To date, there is no record of Schweitzer ever appealing this rejection or refiling the administrative remedy at the institution level as directed.  Further, there is no evidence that

Schweitzer ever sought and received any extensions of time with regard to this matter.

In his filings, Schweitzer never asserts that he has, in fact, exhausted his administrative remedies. Rather, he addresses the failure to exhaust argument briefly in his traverse by claiming that any attempt at administrative remedy will fail because the BOP ". . . is attempting to exert an incorrect version of statutory authority." (Doc. 23, Traverse at 36.) His argument is without merit. The exhaustion procedure contemplates several tiers of review, and the grievance system is not exhausted when an inmate fails to take timely action through established channels to a conclusion. Consequently, it is evident that Schweitzer has failed to exhaust his administrative remedies with regard to his challenges to sentence computation by the BOP.[13]

## III. Conclusion

For all of the foregoing reasons, the habeas corpus petition will be denied. An appropriate Order follows.

---

[13] Because the court find's Schweitzer's claims regarding the BOP's calculation of his sentence to be unexhausted, it declines to entertain the merits of these claims in the alternative.

UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

LEO F. SCHWEITZER,                            :
                                              :
       Petitioner                             :
                                              :
  v.                                          :   CIVIL NO. 3:CV-05-2042
                                              :
UNITED STATES, ET AL.,                        :   (Judge Kosik)
                                              :
       Respondents                            :

**O R D E R**

**NOW, THIS 27th DAY OF APRIL, 2006,** in accordance with the foregoing Memorandum, **IT IS HEREBY ORDERED AS FOLLOWS:**

1. The petition for writ of habeas corpus is **denied**.

2. Petitioner's motion for evidentiary hearing (Doc. 22) and motion for summary judgment (Doc. 29) are **denied**.

3. The Clerk of Court is directed to close this case.

                                                  s/Edwin M. Kosik
                                               United States District Judge